Thank you. Madam Clerk, please call the first case. Case 090214, Charles Davis, Appellant by Michael Carter v. Material Handling Associates, Inc., Adelaide Lee Marshall. Mr. Carter, you may proceed. Thank you. May it please the Court and Counsel. This case arises from the granting of a summary judgment in favor of defendant who designed this product in order picker. Summary judgment grants, as you know, are reviewed de novo, and all reasonable inferences must be drawn in my party's favor, as they should have been at the trial court level. What we have is a product. The product is this order picker, and more specifically, it has some pulleys on a mast. And this is where it's important. The mast has two sides to it. On what we'll call side A of the mast, there's electrical cords, electrical cables. That side has pulleys with spring tensioners fastened to it, so that the electrical cables will never do what's called riding or jumping the pulleys to become wedged. On the opposite side of the mast, what we'll call side B, apparently another engineer designed the hoses, the hydraulic hoses. The hydraulic hose side does not have these spring tensioners. The hydraulic hose side only has some basic cable ties at the top. That, in our expert's opinion, the only expert opinion in this case, in an affidavit that was not challenged under any basis, but which stands completely, our expert said that shows that this product was designed effectively from the time it left the manufacturer up until the time of this particular injury because there was not sufficient tension. The hoses, the hydraulic hoses, were not kept taut. They were not kept tight, and they were allowed to jump this particular pulley. And our expert opined in an affidavit that was not challenged that that was the cause of this incident. Despite having that affidavit with those particular facts, summary judgment was granted. Now, one can say, let's look at the affidavit and let's see if the affidavit was sufficiently grounded in fact. The affidavit relied upon some actual factual witness observations. William McMorris, an employee of Caterpillar Logistics on the scene, said that at the time of the accident, no parts were missing. He looked at the hoses. He did not see wear on the hoses. No wear, no tear. What he did see was stretching on the hoses. At page 4060 of the record, he says, these hoses appeared to be pulled apart like they had been stretched. And he said at page 4060, it did not look like a burst. He went on and said it looked like he just pulled something apart. That's consistent with what Larry Stanford saw. Larry Stanford was a mechanic, and he saw this after the incident. He indicates that it looked rough. It looked ragged and uneven. There's also Krista Mayo's, M-A-Y-O's testimony. She examined the hose after the incident. One end of the hose was hanging free while the other was pinched. Her words, pinched between the pulley bracket and the mast. And she testified at 3414 in the record that the hose was not sitting in the pulley as it should have been. She described cracking on the outer surface of the hose. But this cracking, she testified, was consistent with a pulling action. Those are the factual predicates that our expert, Mr. Tate, relied upon when he formed his opinion. Additionally, Mr. Tate said, there are some other factors that are very consistent with his opinion on how this accident occurred. The lengths of the hose. The lengths of the hose, as viewed after this incident, would have been exactly as one would have expected if the order picker was at the level the plaintiff testified he was working at at the time this occurred. Additionally, the spray pattern, what the plaintiff testified to as the pattern of spray, would have been exactly as one would have expected if this hose would have been caught. What we have is really interesting. I've only been doing this for 12 years, but I've never seen a product's case where the alternative design, what would have kept the product or this accident from happening, was actually on the other side of the same mast on the product. All they would have had to do was put screens on it. The trial court granted summary judgment, and the trial court said, plaintiff, you did not prove, and I want to use the exact words, but I believe he indicated you did not prove the absence of other possible causes. And I think he mentioned dry rot and some other things. I suppose the implicit issue before the court is whether to survive summary judgment on a product case like this, a plaintiff must have a showing that is sufficient to grant summary judgment for the plaintiff. To what level of proof must one have before you can simply overcome a defendant's motion for summary judgment and proceed to trial? We have the only evidence, we have the only expert's affidavit, and the expert's affidavit was just, it flatly stated this was the cause and this is why, and it gave each of these bases, as I've articulated, the affidavit was never challenged. Under existing law, summary judgment should be reversed, in this case should be remanded for trial. As early as 1969, this appellate court has held in Texaco against Bauer, B-A-H-R, that a plaintiff need not disprove all possible causes. These cases go on through Nolan against Schaaf, where this appellate, I apologize, Nolan against Schaaf, where the appellate court stated that you do not have to have the actual product. I want to bring that case, I segue to that somewhat inartfully, because the hose in this case, as I'm sure you're all aware, turned up missing. The actual hose in this case was gone. Fortunately, like in Nolan, like in the case, Nolan where the ladder, I believe, turned up missing, there were photographs of the ladder, there are other cases that rely similarly upon the testimony of witnesses. In this case, we have three witnesses who testified they saw the product after the incident, they saw the hose, and they all three testified, and they're not our witnesses, they're not plaintiff friendly, they were controlled, as you can tell from the record, by other defendants in this case. Those three testified that the hose in question looked cracked like it had been ripped apart. Upon that evidence, with the cases that we've cited, it's our position that this case should be reversed and remanded for trial. Unless there are any questions, I'll reserve the remainder of my time for rebuttal. I don't believe there are. Thank you, Mr. Carter. Thank you. Mr. Marshall. May it please the court, Lee Marshall for the defendant. The plaintiff in this case cannot prove by direct evidence what caused the hydraulic hose to fail because the hose itself is missing. So we're left with what is essentially a circumstantial evidence case as to what caused the hose to fail. And in that type of case, the law is clear that the plaintiff must present evidence that there was no abnormal use of the product and that there were no reasonable secondary causes of the failure. Here, the plaintiff can't present that evidence because the record is filled with evidence of abnormal uses, misuses, negligent maintenance, and in fact, the plaintiffs themselves alleged negligent maintenance and other possible causes of the hose failure. For example, with respect to abnormal use, there was evidence that the order pickers at this facility routinely ran into shelving racks and were damaged. At the scene of the accident on this day, the boxes were askew and had been disturbed. Mr. Morris testified that the order picker appeared damaged like it had been hit and that the hose was severed as a result. Ms. Mayo testified that it looked like the order picker took a blow which caused the hose to break. Mr. Stanford testified that it appeared the order picker crashed into something and that the hose rupture was a result of a traumatic impact force. And in fact, when the maintenance company, Calumet, did its investigation of the accident, they themselves stated that the accident was caused by customer abuse to the order picker. With respect to negligent maintenance, there was also evidence of that. For example, the plaintiff did not do a visual inspection or a safety check of the order picker before using it. Ms. Mayo testified that the hose looked dry rotted. The plaintiff's own expert in this case stated in his report that it was conceivable that the hose could have hardened with age to begin forming cracks. So rather than presenting evidence of no abnormal use or no reasonable secondary causes, the plaintiff, in fact, ran with that evidence and alleged other causes of actions against the maintenance company. For example, in the operative complaint, the plaintiff alleged that the hose had the propensity to crack, rot, break, or otherwise fail. The plaintiff sued Calumet, the maintenance company, for negligent maintenance, and they pursued that claim aggressively until they recently settled it. The plaintiff also attempted to allege later in its proposed fourth amended complaint that the hose was severed because the guard adjacent to it was impacted. So we have a situation where not only do we have evidence of abnormal uses, other causes of the hose failure, but the plaintiff himself has pursued that evidence and alleged claims based on it. In contrast, the plaintiff's claim against MHA, my client, relied on almost no evidence and an entirely speculative expert affidavit. The expert couldn't testify with any certainty as to what caused the hose to fail because he didn't have the hose to inspect. He didn't even have the hose bracket, which was adjacent to the hose, to inspect in an unaltered condition because Mr. Stanford, the mechanic, had hammered it back into shape with a sledgehammer. So none of the allegedly failed parts were available to inspect in an unaltered condition here. This is a circumstantial evidence. In addition, the plaintiff's expert never explains how the order picker could have operated for over 1,400 machine hours without any kind of failure. He never explains why the hose in this case, according to him, suddenly jumped the pulley when it had been working fine for over three years. We're left with a case where there is abundant evidence of other causes, and without the hose itself, without the failed part, the jury would be left to speculate and really just guess as to what caused this accident, given all of the other evidence of other causes. In our view, this case is just like the Sanchez case, which we cited in our brief. That was a tire failure case where the plaintiff drove 3,000 miles after the tire tube had been changed without an incident, and the tire tube was not available. There was an expert affidavit in an attempt to defeat summary judgment where he essentially speculated and inferred that it must have been the tire tube that was defective, and this court said, no, that's not enough because you haven't presented evidence to exclude other possible causes. In this case, we would ask the court to affirm the summary judgment holding. In addition, the plaintiff appealed the denial of his motion to amend his complaint, which was brought post-judgment in this case. The right to amend after summary judgment, as the court knows, is governed by Section 2-616. It's a four-factor test, and here the plaintiff can't satisfy any of those four factors to justify an amendment post-judgment. First, the amendment did not cure the defective pleading. Instead, the plaintiff was attempting to allege yet another cause for the accident rather than to eliminate any of these other causes. The amendment would have caused prejudice and surprise. As we're talking about a case that had been litigated for over four years by this point, there had been abundant discovery, motions had been filed, the amendment wasn't timely, and the plaintiff had previous opportunities to amend. In fact, this would have been their fourth amendment, and it was based all on evidence that the plaintiff had long before summary judgment. So we would ask the court in this case, based on all of the other evidence of other possible causes, abnormal use, and the fact that this is a circumstantial evidence in which the burden is on the plaintiff to present evidence that there aren't such other causes in this case, we would ask the court to affirm it. I don't believe there are any questions. Thank you, Mr. Marshall. Mr. Carter, you may reply. Thank you, Your Honor. I'll respond ever so briefly. There's no case in Illinois that the defendant has cited that stands for the proposition, and I pointed this out in my reply briefly. It's very short, but to this point, that stands for the proposition that plaintiff in this situation must negate all other causes. In fact, the Texaco case, the Stewart case, the Matika, M-A-T-E-I-K-A case, all deal with a situation and say that they do say in the first part that plaintiff must have evidence that tends to negate other causes or have a proper expert affidavit, and that's the key. The or part, have a proper expert affidavit. In this case, I won't go over everything again. The expert affidavit was proper. It was never challenged. What defendant seeks to do here, and I think he caught himself mid-argument, talking about what that we didn't prove. Asking us, for instance, to prove that ghosts don't exist, that's sort of an argument, the logical fallacies that we were taught about when we first read, I think, Copey's book on logic many years ago. You can't prove that certain things don't exist. What we're left with is what does exist, and we have to make reasonable inferences from that. And what does exist that's reasonable is exactly what our expert testified to in his affidavit. They talk about our expert couldn't testify to this, that, the other. They never took his death. The only evidence is his affidavit. That stands completely unrebutted. In the Sanchez case that he spoke of, in the Sanchez case, no witness ever saw that inner tube. Unlike this case where three witnesses saw the hose and testified extensively to their recollections of the hose that it looked stretched, and the cracks that counsel alluded to is what I indicated earlier, Ms. Mayo testifying, there were cracks that looked like something had been stretched. That's the evidence that's here. It's different from Sanchez where no one saw the inner tube so no one could tell how did this inner tube fail. This case stands on its own. It's distinguishable from Sanchez. We have a proper expert affidavit. We should not, to defeat summary judgment, we should not be required to prove our case to the exclusion of all other causes, an actual higher standard than we would have to meet in a jury instruction. That's exactly what they're seeking this court to do. This court should not take that invitation. This court should reverse this back, remand it to the trial court. Thank you very much. Thank you, Mr. Carter. Thank you, counsel, both for your arguments in this matter this morning, or this afternoon, excuse me. It will be taken under advisement and a written disposition, shall it be so.